FILE VIA FAX

FILED

1
**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
2 SETH A. SAFIER (State Bar No. 197427)
KRISTEN SIMPLICIO (State Bar No. 263291)
3 835 Douglass Street
San Francisco, California 94114
4 Telephone: (415) 336-6545
Facsimile: (415) 449-6469
5

6 Attorneys for Plaintiff

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11                                          CASE NO. ____

12 GUY JAKUB, ON BEHALF OF HIMSELF, THE GEN-
ERAL PUBLIC, AND THOSE SIMILARLY SITUATED,
13                                          CLASS ACTION COMPLAINT
                                            FOR VIOLATIONS OF THE
14     Plaintiff,                           FAIR DEBT COLLECTION
                                            PRACTICES ACT, 15 USC §
15          v.                              1692, ET SEQ; VIOLATION OF
                                            THE ROSENTHAL FAIR DEBT
16                                          COLLECTIONS PRACTICES
A.R.M. SOLUTIONS, INC.; BRAD JADWIN; JAMES  ACT, CALIFORNIA CIVIL
17 MONTGOMERY,                              CODE § 1788, ET SEQ; AND
                                            UNFAIR BUSINESS PRAC-
18          Defendants.                     TICES

19

20

21

22

23

24

25

26

27

28

1    Guy Jakub, by and through his counsel, brings this Class Action Complaint against

2    A.R.M. Solutions, Inc., Brad Jadwin and James Montgomery on behalf of himself and, as set

3    forth herein, those similarly situated, for violations of the Fair Debt Collection Practices Act, 15

4    USC § 1692, et seq.; violations of the Rosenthal Fair Debt Collections Practices Act, California

5    Civil Code § 1788, et seq.; and violations of section 17200, et seq. of the California Business and

6    Professions Code. The following allegations are based upon information and belief, including the

7    investigation of Plaintiff's counsel, unless stated otherwise.

8                                              **INTRODUCTION**

9        1.    This case is about Defendants' unlawful and unfair debt collection practices.

10   Specifically, Defendants employ abusive debt collections methods in violation of state and federal

11   law, and a United States Bankruptcy Court order, by engaging in a pattern of attempting to collect

12   unauthorized amounts, failing to provide adequate notice and verification of debt, and failing to

13   comply with the terms and conditions of United States Bankruptcy Court order.

14                                                **PARTIES**

15       2.    Guy Jakub ("Plaintiff") is an individual and a resident of Brentwood, California.

16       3.    Defendant A.R.M. Solutions, Inc. ("A.R.M.") is a California corporation with its

17   principal place of business in Camarillo, California.

18       4.    Defendant Brad Jadwin ("Jadwin") is a principal and officer of A.RM. Jadwin is a

19   resident of California.

20       5.    Defendant James Montgomery ("Montgomery") is a principal and officer of

21   A.R.M. Montgomery is a resident of California.

22       6.    The Parties identified in paragraphs 3 through 5 of this Class Action Complaint are

23   collectively referred to hereafter as "Defendants."

24       7.    At all times herein mentioned, each of the Defendants was the agent, servant,

25   representative, officer, director, partner or employee of the other Defendants and, in doing the

26   things herein alleged, was acting within the scope and course of his/her/its authority as such

27   agent, servant, representative, officer, director, partner or employee, and with the permission and

28   consent of each Defendant.

-1-

8.     At all times herein mentioned, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

9.     At all times herein mentioned, the acts and omissions of Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

10.     At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein. At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as herein alleged.

## JURISDICTION AND VENUE

11.     This action is brought by Plaintiff pursuant, *inter alia*, to the California Business and Professions Code, section 17200, *et seq*. Plaintiff and Defendants are "persons" within the meaning of the California Business and Professions Code, section 17201.

12.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California.

13.     Defendants have directed and engaged the activities described herein from their headquarters in the State of California. Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California, including in the County of Contra Costa.

14.     In directing their collection activities, as described herein, from the State of California, Defendants purposely availed themselves of the laws, benefits and protections of the State of California.

15.     Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

-2-

## SUBSTANTIVE ALLEGATIONS

### Defendants' Unlawful Debt Collection Practices Began After Hollywood Video Declared Bankruptcy

16.     Hollywood Entertainment Corporation, also known as Hollywood Video, was a VHS, DVD, and video game rental company founded in 1988.  Hollywood Video was the largest direct competitor to Blockbuster Video, until it was purchased by Movie Gallery, Inc. ("MGI") in 2005.

17.     While in operation, Hollywood Video refused to rent to customers who had unpaid late fees or unreturned items on their account.  In addition, Hollywood Video required customers to provide a credit card or bank account to which it could charge unpaid fees in the event a product was not returned.

18.     MGI declared bankruptcy in February 2010 and announced that it would shut down Hollywood Video locations three months later.   On April 30, 2010, it was announced that all U.S. Hollywood Video stores would file for Chapter 7 bankruptcy in May 2010.   The last US Hollywood Video location closed on July 31, 2010, and soon thereafter the liquidation sale of Hollywood Video was completed.  The First Lien Term Lenders Liquidating Trust (the "Trustee") was appointed, by the United States Bankruptcy Court, as the Trustee for the liquidating debtors, Movie Gallery, Inc., et al.  Pursuant to the Bankruptcy Plan, the Trustee was charged with, *inter alia*, liquidating and collecting certain assets.

19.     MGI's alleged assets included approximately 3.3 million accounts receivable from former customers related to alleged late fees and other alleged charges totaling over $244 million ("Customer Accounts").

20.     The Trustee contracted with Credit Control Services, Inc. ("CCS"), a Delaware corporation, with its principle place of business, in Newton, Massachusetts to handle the collection of the Customer Accounts.  CCS, in turn, subcontracted with third parties to handle the collection of the Customer Accounts.

21.     Nation Credit Solutions, LLC ("NCS"), with its principle place of business in Oklahoma City, Oklahoma subcontracted with CCS to collect the Customer Accounts.

-3-

22.     NCS, without any notice to approximately 500,000 consumers, made negative credit reports to TransUnion and Experian for the Customer Accounts and additional "collection fees," and double charges—i.e., where customer were held accountable for both a late fee and a product charge.

23.     Following a massive outcry, the Attorneys General of all 50 states took action, and in May 2011, entered into a Stipulation and Agreed Order ("Order").  (A copy of the Order is attached hereto as Exhibit A.)

24.     The Order states that the Attorneys General raised a number of objections and concerns about the collection activities of CCS and NCS, including, without limitation, the following:  (a) lack of notice to consumers regarding the amounts allegedly owed; (b) negative credit reporting regarding amounts allegedly owed; (c) demands for high collection fees; (d) double charging whereby a customer is charged the replacement cost of an unreturned item as well as for late charges associated with that unreturned item; (e) issues regarding the validity and enforceability of some of the purported debts; (f) lack of supporting documentation to substantiate the alleged debts; and (g) consumer complaints directly challenging underlying amounts alleged to be due and owing.

25.     The Order establishes that the Trustee may proceed with efforts to collect valid customer accounts pursuant to, without limitation, the following terms: no reports may be made to any credit reporting agency at any time; any agent collecting the customer accounts may "not state, suggest, imply or otherwise represent to any customer that their failure or refusal to pay the Customer Account could result in adverse credit reporting"; the Trustee must take all necessary actions to ensure that any debt collection activity complies with the Fair Debt Collection Practices Act and applicable state laws; collection fees or interest charges must not be imposed or added to principal amounts owed; consumers must not be charged both late fees and replacement charges for the same item, but rather, may only be charged the lesser of the two charges for any given rental item; and consumers must not be charged any product charges where that charge is the only fee reflected on the Customer Account for that transaction.

26.     The Order further requires that the Trustee take all necessary steps to ensure the

above requirements were implemented and adhered to by all those collecting the accounts on its behalf.

27. The Order then states that in the event the Trustee sells or transfers title to and ownership of any Customer Account to any third party, a copy of the Order must be included in the transfer. The Order further requires any purchaser of any Customer Account to assume the obligations of the Trustee as set forth in the Order.

28. Finally, the Order stated that it does not vest jurisdiction in the United States Bankruptcy Court for the Eastern District of Virginia over claims by a private party against any third party collection firm involved in attempting to collect the Customer Accounts.

29. Sometime after entry of the Order, Defendants purchased Customer Accounts. Alternatively, Defendants contracted with CCS and/or the Trustee to collect Customer Accounts on their behalf.

30. Despite being aware of the Order, Defendants (including Jadwin and Montgomery, in their personal capacity) nevertheless knowingly and intentionally failed to comply with the Order. Moreover, Defendants knowingly and intentionally violated State and Federal law with their aggressive debt collection practices.

31. Beginning sometime after May 2011, Defendants began mailing letters to consumers demanding payment for purported debts owed to Hollywood Video.

32. The letters were from A.R.M, but were sent at the direction of all the Defendants. Indeed, Defendants Jadwin and Montgomery personally directed, controlled, regularly and materially participated/engaged in, and profited from, all of the debt collections operations of A.R.M., including in the collection of Plaintiff's alleged debts. Jadwin and Montgomery also designed, structured and controlled all of Defendants' debt collections policies and practices, including personally negotiating and contracting with the Trustee to collect the Customer Accounts. Finally, Jadwin and Montgomery personally designed, drafted, controlled and approved all of the collection letters that Defendants mailed regarding the Customer Accounts, including the letter mailed to Plaintiff.

33. Defendants' letters failed to provide (1) an accounting of how the amounts

purportedly owed were determined and/or (2) a verification of the amounts purportedly owed. The letters did not state that the amount would (or could legally) not be reported to the credit reporting agencies. To the contrary, in direct violation of the Order, the letters implied that uncollected amounts would be reported to credit reporting agencies. Defendants knew that the recipients would only pay if they believed the unpaid amounts would be reported to the credit bureaus, and thus they intentionally led recipients to believe that credit reporting would occur, so that recipients would pay the amounts demanded.

34. In generating the amounts owed, Defendants used unverifiable data. Defendants knew that their records were inadequate to verify the debts owed and that in many cases, the amounts sought to be collected were inaccurate, but Defendants generated the letters and mailed them to thousands of persons.

35. When Defendants are asked for additional information, such as an accounting or verification, of the alleged debt, Defendants typically refuse to answer the phone or provide verification by mail. Similarly, when customers complain to Defendants that the Customer Account is mistaken, not owed or incorrect, Defendants persist in their unlawful collection efforts without completing a diligent review of the Customer Account. Indeed, Defendants did not conduct any review of the Customer Accounts prior to initiating collection efforts. When Defendants do answer the phone, they provide false and deceptive information to customers to further their unlawful collection practices.

36. In violation of the Order, Defendants have attempted to collect product charges where the product charged is the only fee related to the Customer Account.

37. In violation of the Order, Defendants have attempted to collect additional fees or charges on top of the principal amounts that are allegedly owed.

38. Above and beyond Defendants' violation of the Order, Defendants have engaged, and continue to engage in, without limitation, the following unlawful debt collection practices: representing the money is owed when it is not; not providing adequate verification; providing false and deceptive information; and/or making harassing telephone calls to collect debt not owed and other unauthorized communications. Moreover, Defendants did not adopt or maintain

-6-

adequate procedures to avoid violations of the Order.

**Plaintiff Falls Victims to Defendants' Unlawful Debt Collection Practices**

39.    Plaintiff was a member of the Hollywood Video before it went bankrupt.   Plaintiff periodically rented movies from Hollywood Video, and maintained a credit card on file so that Hollywood Video could assess charges.   Plaintiff did not receive any communication from Hollywood Video about unpaid late charges.

40.    On or about October 14, 2012, Plaintiff received a letter from Defendants demanding $17.95.

41.    The letter purported to be from A.R.M.   The front of the letter stated, "You have been unresponsive to previous collection efforts on this past due account for our client, First Lien Term Lenders Liquidating Trust, the legal successor to Hollywood Vide and Movie Gallery." Despite Defendants' representations, Plaintiff had never heard of A.R.M.   Nor had he previously been contacted by A.R.M. (or anyone else) in connection with alleged unpaid amounts on his Hollywood Video account.

42.    The letter also stated, "Below are the specific titles that contributed to this debt. Your total amount due may include some titles not listed here."   Below that, the letter identified one movie—"DVD-OUT-OF-TOWNERS THE (1999)."   The letter did not include any accounting of how the $17.95 purportedly owed was determined.   In particular, the letter did not state, or otherwise indicate, whether the amounts allegedly due were related to late fees, product fees or both.

43.    The letter then stated "Please send your payment for the overdue bill or call us to make payment upon receipt of this notice.   For your convenience and prompt resolution you may pay with your Visa, MasterCard, American Express or Discover Card."   Defendants failed to mention, however, that they would unlawfully charge a $4.95 "convenience fee" for certain credit card payments.

44.    The front of letter further stated to "To cease collection activity, remit payment in full upon receipt of this notice."   The back of the letter stated "As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit

-7-

1  reporting agency if you fail to fulfill the terms of your credit obligations. We will not submit a

2  negative credit report to a credit agency about this credit obligation until the expiration of the

3  time period described in the notice of the front of this letter." Defendants intentionally included

4  these false, deceptive and unlawful statements on the letters to cause Plaintiff, and others

5  similarly situated, to believe that non-payment of the alleged debt could or would result in a

6  negative credit report, when Defendants knew the opposite to be true. In fact, there is no legal

7  requirement that Defendants provide to Plaintiff, and others, the above "notice." To the contrary,

8  there is a legal requirement in the Order that Defendants *not* provide any statement that would

9  even imply or suggest that non-payment of the alleged Hollywood Video debt would or could

10  result in a negative credit report. Moreover, contrary to Defendants' false and deceptive

11  representations, there is no "time period described in the notice on the front of" the letter. Rather,

12  Defendants falsely and deceptively made it appear that the letter was a subsequent notice and that

13  the "time period" had already expired. In other words, Defendants falsely and deceptively made

14  it appear that (1) the time period had expired, (2) payment was due immediately, and (3)

15  Defendants could report submit a negative credit report at any time. The letter, including these

16  statements, led Plaintiff to believe that Defendants could or would report the debt to credit

17  reporting agency if he did not pay immediately.

18      45.     Plaintiff called the number listed on the letter and reached a representative. The

19  representative informed Plaintiff that he had to pay the amount to avoid further collections

20  attempts. Plaintiff disputed the debt, but the representative falsely said that Plaintiff would need

21  to write a letter to contest the unpaid amount. Plaintiff then asked if the amount would be

22  reported to credit bureaus, and the representative falsely and deceptively informed him that while

23  A.R.M. would not report it to credit bureaus, other collection agencies might do so if the debt was

24  eventually turned over to them.

25      46.     In reliance on the above false and deceptive misrepresentations and omissions, on

26  or about November 20, Plaintiff paid $17.95 to A.R.M. to avoid having the unpaid debt reported

27  to the credit bureaus. Plaintiff specifically did so not because he owed the debt, but rather

28  because he did not want to jeopardize his credit rating for $17.95.

-8-

**Defendants Have Victimized Other Consumers Nationwide**

47.    Plaintiff's experience was not an isolated incident. Rather, Defendants have employed the same unlawful collections practices against many other consumers throughout the nation. Many of these consumers believe that if they do not pay the amount, the debt will be reported to the credit bureaus.

48.    For example, on November 25, 2012, one consumer posted this statement on an Internet complaint forum:

> A few months ago, I spoke with someone from A.R.M. and explained that the video in question was returned long ago. I also stated that before Hollywood Video closed, the store was in total disarray. A couple of weeks ago, I too received a notice stating that I was unresponsive to their collection efforts. I refuse to pay for something that I did return in a timely manner (was not late in the first place). This video was rented in 2009 from what their records are stating. They won't return my phone calls either. If I continue to get letters from them, I will take A.R.M. to court and sue them for harassment and whatever else I can sue them for due their unresponsiveness to my communications. I also am going to report them to the Better Business Bureau! Someone needs to put these regulated collection agencies in their place. I'll be darned if I will let these clowns mess with my credit!

http://www.consumeraffairs.com/entertainment/hollywood_video.html, last visited November 28, 2012.

49.    On September 30, 2012, another consumer wrote:

> Today, 09/28/12, I received a collection notice for $19.99 for a video that I rented from Hollywood Video on 04/28/2009. Can you image the gall! Three years ago for a video I returned. What horrible bookkeeping! I returned the video the next day, and ARM Solutions (collection agency) lied, yes, lied that they have sent several late notices to me. They haven't. How can an agency get away with lies especially to an old man (I'm 71 years old on Social Security!) and not themselves be prosecuted? I think that I shall sue them for harassment, and any state that allows this kind of criminal extortion to perpetuate! I am owed an apology for this harassment! But they don't even answer their phone nor call back in response to my several messages, and all this for an illegitimate $19.99! I am filing a complaint with the BBB and the California Attorney General and the Ohio Attorney General - this is the 1% against us lazy 47%!

Id.

50.    On June 29, 2012, another consumer wrote:

> I received a letter requesting payment of a past due debt to Hollywood Video from ARM Solutions, Inc. on behalf of First Lien Term Lenders Liquidating Trust, claiming to be legal successor to Hollywood Video and Movie Gallery. The claim is fraudulent. When I contacted a collections agent at ARM Solutions, Inc at the number enclosed in the letter today (804-214-6966), I requested proof of the alleged unreturned video rental; but the agent refused to provide any and threatened to submit a notice of non-payment to credit reporting agencies.

-9-

1

2 http://www.consumeraffairs.com/entertainment/hollywood_video.html?page=2#lbpop,

3 last visited November 28, 2012.

4
     51.    On January 15, 2012, another consumer wrote:

5
    I received a letter in the mail from ARM Solutions collection agency, claiming that
6     I owe the "Legal Successor of Hollywood Video" $78.24. They listed eight movie
    titles that "contributed to this debt". I am not certain if they are claiming these had
7     late fees associated with them, or if I never returned the movies. Either way, I have
    never rented any of the movies listed from Hollywood video, let alone heard of
8     them! Their claims are fraudulent, and I am concerned that they will affect my
    credit.

9
http://www.consumeraffairs.com/entertainment/hollywood_video.html?page=11, last visited
10
November 28, 2012.
11
     52.    On January 9, another consumer wrote:
12
    On December 27, 2011, I received a notice from ARM Solutions Collection firm
13     stating that I owed $85.87 in debt for videos rented in November 2009. There had
    been no notices of late fees since that time and the request for payment is a scam. I
14     tried talking with ARM representative on two separate attempts and tried to get
    detail information on the claim. Each time they hung up on me as they could not
15     answer the questions on where this was generated from.

16     They are claiming they have no information but bill is due from me. This is totally
    unjustified and false claim to get money I do not owe. There has been zero
17     indication from Hollywood Video that I was ever late in returning the movies
    between November 2009 and January 2012. I am submitting a response back in
18     writing denying the payment and claiming that the request for past due money is
    false.

19 Id.

20
## CLASS ALLEGATIONS
21
     53.    Plaintiff brings this action against Defendants on behalf of himself and all others
22
similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.
23
Plaintiff seeks to represent a Class defined as follows:
24
    All persons in the United States from whom Defendants attempted to collect
25     debt associated with Hollywood Video or Movie Gallery from December 3,
    2008 through the present.
26
For purposes of this Class Action Complaint, the unmodified word "Class" and the phrase "Class
27
Members" shall refer collectively to all members of the Class, including the named Plaintiff.
28

54. This action has been brought and may properly be maintained as a class action against the Defendants pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

55. Numerosity: Plaintiff does not know the exact size of the class, but it is estimated that the Class is composed of more than 5,000 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

56. Common Questions Predominate: This action involves common questions of law and fact to the potential class because each Class Member's claim derives from the unlawful or unfair debt collection efforts, making false representations about amounts owed and failing to provide sufficient accounting of debts owed to Plaintiff and those similarly situated had with Defendants without their knowledge and consent. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. Among the questions of law and fact common to the class are:

a) Whether Defendants violated the Fair Debt Collections Practices Act by systematically engaging in unauthorized communications, making false representations about the nature of the debt, attempting to collect unauthorized amounts and/or fees, and failing to provide adequate notice and verification of debt;

b) Whether Defendants violated the Rosenthal Fair Debt Collections Practices Act by systematically attempting to collect unauthorized amounts, failing to provide adequate notice and verification of debt to collect debts that Plaintiff, and those similarly situated, had with Defendants;

c) Whether Defendants violated section 17200, et seq of the California Business and Profession Code by violation the Rosenthal Fair Debt Collections Practices Act, Fair Debt Collections Practices Act and/or the Order;

d) Whether Defendants engaged in unfair or fraudulent business practices;

-11-

e)      Whether Defendants engaged in the alleged conduct intentionally, knowingly, recklessly, or negligently;

f)      The amount of revenues and profits Defendants received and/or the amount of monies or other obligations lost by Class Members as a result of such wrongdoing;

g)      Whether Class Members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

h)      Whether Class Members are entitled to payment of actual, incidental, consequential, special, treble, punitive, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief?

57.      Typicality: Plaintiff's claims are typical of the class because Defendants attempted to collect unauthorized debts and failed to provide adequate notice and/or verification of debt. Thus, Plaintiff and Class Members sustained the same injuries and damages arising out of Defendants' conduct in violation of the law. The injuries and damages of each Class Member were caused directly by Defendants' wrongful conduct in violation of law as alleged.

58.      Adequacy: Plaintiff will fairly and adequately protect the interests of all Class Members because it is in his best interests to prosecute the claims alleged herein to obtain full compensation due to him for the unfair and illegal conduct of which he complains. Plaintiff also has no interests that conflict with, or are antagonistic to, the interests of Class Members. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and that of the class. No conflict of interest exists between Plaintiff and Class Members hereby, because all questions of law and fact regarding liability of Defendants are common to Class Members and predominate over any individual issues that may exist, such that by prevailing on his own claim, Plaintiff necessarily will establish Defendants' liability to all Class Members. Plaintiff and his counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class Members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class Members.

59.      Superiority: There is no plain, speedy, or adequate remedy other than by

1    maintenance of this class action.  The prosecution of individual remedies by members of the class

2    will tend to establish inconsistent standards of conduct for the Defendants and result in the

3    impairment of Class Members' rights and the disposition of their interests through actions to

4    which they were not parties.  Class action treatment will permit a large number of similarly

5    situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

6    and without the unnecessary duplication of effort and expense that numerous individual actions

7    world engender.  Furthermore, as the damages suffered by each individual member of the class

8    may be relatively small, the expenses and burden of individual litigation would make it difficult

9    or impossible for individual members of the class to redress the wrongs done to them, while an

10   important public interest will be served by addressing the matter as a class action.

11   60.    Nexus to California.  The State of California has a special interest in regulating the

12   affairs of corporations that do business here and persons who live here.  Defendants also have

13   made more unlawful attempts at collecting debt in California than in any other state.

14   Accordingly, there is a substantial nexus between Defendants' unlawful behavior and California

15   such that the California courts should take cognizance of this action on behalf of a class of

16   individuals who reside throughout the United States.

17   61.    Plaintiff is unaware of any difficulties that are likely to be encountered in the

18   management of this action that would preclude its maintenance as a class action.

19   ## CAUSES OF ACTION

20   ### PLAINITFFS' FIRST CAUSE OF ACTION
21   (Violation of Fair Debt Collection Practices Act, 15 USC § 1692e)
     On Behalf of Himself and the Class

22   62.    Plaintiff realleges and incorporates by reference the above paragraphs of this Class

23   Action Complaint as if set forth herein.

24   63.    Plaintiff, and members of the Class, are "consumers" under 15 USC § 1692a since

25   they are natural persons allegedly obligated to pay debts to Defendant.

26   64.    Defendants are "debt collectors" under 15 USC § 1692a(6) and they use

27   instruments of interstate commerce in the mails and phones to collect alleged debts.

28

65.     Defendants are subject to the regulations and prohibitions of the Fair Debt Collection Practices Act, 15 USC § 1692, et seq.

66.     Defendants violated 15 USC § 1692e when they used false, deceptive, or misleading representations or means in connection with the collection of $17.95 from Plaintiff.

67.     Defendants violated 15 USC § 1692e(2) when they misrepresented (a) the character, amount, or legal status of Plaintiff's alleged debt; and (b) the services rendered or compensation which may be lawfully received by Defendants. Defendants specifically misrepresented that Plaintiff owes $17.95 when he does not. In fact, Defendants did not conduct any investigation to determine whether Plaintiff owed $17.95. Defendants also represented that they were legally obligated to inform Plaintiff that his alleged debt could be reported to a credit bureau when they knew that to be untrue. Defendants made similar false representations to thousands of others similarly situated.

68.     Defendants violated 15 USC § 1692e(5) with respect to Plaintiff generally and more specifically in the following manner: by threatening to take any action that cannot legally be taken or that is not intended to be taken. Defendants specifically violated 15 USC § 1692e(5) by omission, suggestion, implication and/or misrepresentation, that, if Plaintiff failed or refused to pay the debt, it would (or could) result in an adverse credit reporting by them or other debt collectors. Defendants further violated 15 USC § 1692e(5) by threatening to take action for amounts that they knew could not be legally collected, including the entire amount due and collection fees. Defendants made similar false representations to thousands of others similarly situated.

69.     Defendants violated 15 USC § 1692e(6) with respect to Plaintiff generally and more specifically in the following manner: falsely representing or implying that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—(A) lose any claim or defense to payment of the debt; or (B) become subject to any practice prohibited by this Fair Debt Collection Practices Act. Defendants specifically violated 15 USC § 1692e(6) by omission, suggestion, implication and/or misrepresentation, that, if Plaintiff failed or refused to pay the debt, the debt could be sold, referred or transferred to another debt collector and then reported to a

-14-

1 credit bureau or that he could lose the ability to fight a negative credit report.

2    70.    Defendants violated 15 USC § 1692e(8) generally, and more specifically, in the

3 following manner: by falsely and deceptively communicating or threatening to communicate to

4 any person credit information which is known or which should be known to be false, including

5 the failure to communicate that a disputed debt is disputed. Defendants specifically falsely and

6 deceptively threatened, by omission, suggestion and/or implication, to communicate that $17.95

7 was due or owed when they knew, or should have known, it to be false. Defendants made similar

8 false representations to thousands of others similarly situated.

9    71.    Defendants violated 15 USC § 1692e(10), generally, and more specifically, in the

10 following manner: by using false representations and/or deceptive means to collect or attempt to

11 collect any debt, including falsely and deceptively representing that $17.95 was due or owing,

12 suggesting or implying that an adverse credit report or continued collection efforts would be

13 made.

14    72.    Plaintiff, and those similarly situated, are entitled to their actual damages,

15 reasonable attorneys' fees and costs under 15 USC § 1692k, additional damages under

16 1692k(a)(2) of at least one thousand dollars per violation and or per letter or phone conversation,

17 whichever is greater, for class action damages of $500,000.00 as set forth in 1692k(a)(2)(B), and

18 for additional damages as deemed just by the Court.

19    73.    Defendants' actions and omissions set forth above were done persistently,

20 frequently and intentionally.

21                    **PLAINTIFF'S SECOND CAUSE OF ACTION**
22         **(Violation of Fair Debt Collection Practices Act, 15 USC § 1692f(1))**
                         **On Behalf of Himself and the Class**
23
24    74.    Defendants violated 15 USC § 1692f(1) generally and more specifically by

25 attempting to collect an amount not in the agreement between Hollywood Video and Plaintiff, and
   those similarly situated.
26
27    75.    Defendants violated 15 USC § 1692f(1) generally and more specifically by

28 attempting the collection of any amount (including any interest, fee, charge, or expense incidental

-15-

to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. Defendants violated 15 USC § 1692f(1) as follows: (1) the $17.95 allegedly owed by Plaintiff is not authorized by the agreement between Plaintiff and Hollywood Video; (2) the $17.95 allegedly owed by Plaintiff is not authorized by the agreement between Plaintiff and Movie Gallery, Inc.; (3) the $17.95 allegedly owed by Plaintiff is not authorized by the agreement Defendants and Hollywood Video, Movie Gallery, Inc., and/or the legal successor to Hollywood Video or Movie Gallery, Inc.; and (4) the collection of $17.95 is not permitted by law including the Order, the Fair Debt Collections Practices Act, the Rosenthal Fair Debt Collections Practices Act, and/or section 17200, et seq. of California's Business & Professions Code.

76. Defendants further violated 15 USC § 1692f(1) generally and more specifically by attempting the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. Defendants violated 15 USC § 1692f(1) as follows: (1) the $4.95 convenience fee is not authorized by the agreement between Plaintiff and Hollywood Video; (2) the $4.95 convenience fee is not authorized by the agreement between Plaintiff and Movie Gallery, Inc.; (3) the $4.95 convenience fee is not authorized by the agreement Defendants and Hollywood Video, Movie Gallery, Inc., and/or the legal successor to Hollywood Video or Movie Gallery, Inc.; and (4) the $4.95 convenience fee is not permitted by law including the Order, the Fair Debt Collections Practices Act, the Rosenthal Fair Debt Collections Practices Act, and/or section 17200, et seq. of California's Business & Professions Code.

77. Plaintiff, and those similarly situated, are entitled to their actual damages, reasonable attorneys' fees and costs under 15 USC § 1692k, additional damages under 1692k(a)(2) of at least one thousand dollars per violation and or per letter or phone conversation, whichever is greater, for class action damages of $500,000.00 as set forth in 1692k(a)(2)(B), and for additional damages as deemed just by the Court.

78. Defendants' actions and omissions set forth above were done persistently, frequently and intentionally.

1

**PLAINTIFF'S THIRD CAUSE OF ACTION**
**(Violation of the Rosenthal Fair Debt Collections Practices Act, California Civil Code §**
2 **1788, et seq.)**
**Plaintiff On Behalf of Himself and the Class**
3

4      79.      Plaintiff realleges and incorporates by reference the above paragraphs of this Class

5    Action Complaint as if set forth herein.

6      80.      The foregoing acts and omissions constitute unfair or deceptive and/or

7    unconscionable trade practices made unlawful pursuant to the California Rosenthal Fair Debt

8    Collection Act, Civil Code § 1788, et seq.

9      81.      Defendants violated Cal. Civil Code §1788.17, which requires "every debt

10   collector collecting or attempting to collect a consumer debt shall comply with the provisions of

11   Sections 1692b to 1692j" of Title 15 United States Code. As laid out above, Defendants willfully

12   ignored the provisions of the federal Fair Debt Collections Practices Act and engaged in a pattern

13   of false representations and a failure to provide a full and accurate accounting of debts owed.

14     82.      Defendants' acts as described above were done willfully and knowingly with the

15   purpose of coercing Plaintiff, and those similarly situated, to pay the alleged debt, within the

16   meaning of Cal. Civil Code § 1812.702.

17     83.      Defendants' acts described above were done willfully and knowingly with the

18   purpose of coercing Plaintiff, and those similarly situated, into repaying the alleged debts within

19   the meaning of Cal. Civil Code § 1788.30(b).

20     84.      As a direct and proximate result of Defendants' violation of California Civil Code

21   §§ 1788.17 and 1788.10(a), Plaintiff and those similarly situated have suffered, and continue to

22   suffer, damages in an amount which will be proven at trial, but which are in excess of the

23   jurisdictional minimum of this Court. Plaintiff and those similarly situated are entitled to, at a

24   minimum, statutory damages of $1,000 per incident as set forth in Civil Code §§1788.17 and

25   1788.30.

26

27

28

**PLAINTIFF'S FOURTH CAUSE OF ACTION**
**(Unfair, Unlawful and Deceptive Trade Practices, Business and Professions Code §**
**17200, et seq.)**
**Plaintiff On Behalf of Himself and the Class**

85.   Plaintiff realleges and incorporates by reference the above paragraphs of this Class Action Complaint as if set forth herein.

86.   Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by, without limitation, the following:

a.   deceptively representing to Plaintiff and those similarly situated, that they owed money associated with their Hollywood Video accounts;

b.   failing to inform Plaintiff and those similarly situated, that if they refused or failed to pay the alleged debts no adverse credit reporting would result;

c.   violating the Fair Debt Collections Practices Act, as described herein;

d.   violating the Rosenthal Fair Debt Collections Practices Act, as described herein; and

e.   violating the Order, as described herein.

87.   Plaintiff, and those similarly situated, suffered injury and lost money or property as a result of these unfair trade practices in that their rights were impinged and/or they paid money to Defendants for alleged debts that they would not have paid had the unfair trade practices not occurred.  Plaintiff specifically paid $17.95 to Defendants that he would not have paid but for his reliance on their unfair trade practices, as set forth above.

88.   Defendants engage in these unfair practices to increase their profits.  Accordingly, Defendants have engaged in unlawful, unfair and/or deceptive trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

89.   The aforementioned practices, which Defendants have used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

90.   Plaintiff seeks, on behalf of himself and those similarly situated, full restitution of monies, as necessary and according to proof, to restore to them any and all monies acquired by

-18-

1  Defendants from them by means of the unlawful, unfair and/or deceptive trade practices

2  complained of herein, plus interest thereon.

3      91.    Plaintiff seeks, on behalf of himself and those similarly situated a declaration that

4  the above-described trade practices are unfair, unlawful, deceptive and/or fraudulent, and an

5  injunction to prohibit Defendants from continuing to engage in the unfair trade practices

6  complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained

7  by order of this Court, will continue to cause injury in fact to the general public and the loss of

8  money and property in that the Defendants will continue to violate the laws of California, unless

9  specifically ordered to comply with the same. This expectation of future violations will require

10 current and future customers to repeatedly and continuously seek legal redress in order to recover

11 monies paid to Defendants to which Defendants are not entitled. Plaintiff, those similarly

12 situated, and/or other consumers nationwide have no other adequate remedy at law to ensure

13 future compliance with the California Business and Professions Code alleged to have been

14 violated herein.

15     92.    As a direct and proximate result of such actions, Plaintiff and the other members of

16 the Class have suffered and continue to suffer injury in fact and have lost money and/or property

17 as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an

18 amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this

19 Court.

20     93.    As a direct and proximate result of such actions, Defendants have enjoyed, and

21 continue to enjoy, significant financial gain in an amount which will be proven at trial, but which

22 is in excess of the jurisdictional minimum of this Court. The acts complained of herein occurred,

23 at least in part, within four (4) years preceding the filing of this Class Action Complaint.

24                                   **PRAYER FOR RELIEF**

25     WHEREFORE, Plaintiff prays for judgment as follows:

26          A. On Cause of Action Numbers 1-2 against all Defendants and in favor of
27          Plaintiff and the Class:

28              1. For actual and compensatory damages as allowed under the Fair

-19-

1    Debt Collection Practices Act;

2    2. For additional damages under 15 U.S.C. § 1692k(a)(2) of at least

3    one thousand dollars per violation;

4    3. For at least $500,000.00 under 15 U.S.C. § 1692k(a)(2)(B), or in

5    the alternative one percent of the net worth of Defendant and its re-

6    lated entities;

7    4. For the Court to fairly apportion all damages among the class mem-

8    bers; and

9    5. For reasonable attorneys' fees to Plaintiff and his counsel pursuant

10    to 15 U.S.C. § 1692k(a)(3);

11    B. On Cause of Action Number 3 against all Defendants and in favor of
12    Plaintiff and the Class:

13    1. For actual or compensatory damages according to proof;

14    2. For statutory damages pursuant to Civil Code §1788.17, and Civil

15    Code §1788.30; and

16    3. Costs and reasonable attorneys' fees pursuant to Civil Code

17    §1788.17 and Civil Code §1788.30.

18    C. On Cause of Action Number 4 against all Defendants and in favor of
      Plaintiff and the other members of the Class:
19

20    1. For restitution pursuant to, without limitation, the California Busi-

21    ness & Professions Code §§ 17200, et seq. and 17500, et seq.;

22    2. For injunctive relief pursuant to, without limitation, the California

23    Business & Professions Code §§ 17200, et seq. and 17500, et seq.;

24    and

25    3. Costs and reasonable attorneys' fees pursuant to Civil Code

26    §1021.5.

27    **JURY TRIAL DEMANDED**

28    Plaintiff hereby demands a trial by jury.

-20-

Class Action Complaint

1  ///

2

3

4      Dated:  December 3, 2012                    **GUTRIDE SAFIER LLP**

5

6

7      _____

8

9                                                  Adam J. Gutride, Esq.
                                                   Seth A. Safier, Esq.
10                                                 Kristen Simplicio, Esq.
                                                   835 Douglass Street
11                                                 San Francisco, California 94114

12                                                 Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-21-

# Exhibit A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MOVIE GALLERY, INC., et al., | ) Case No. 10-30696 (DOT) |
| | ) |
| Liquidating Debtors. | ) |
| | ) |

### STIPULATION AND AGREED ORDER

This Stipulation and Agreed Order (the "Stipulation") is entered into between the First Lien

Term Lenders Liquidating Trustee (the "Trustee"), on behalf of the First Lien Term Lenders

Liquidating Trust (the "Trust") (each as defined in the Joint Plan of Liquidation of Movie Gallery,

Inc. and Its Affiliated Debtors and Debtors in Possession (the "Plan") approved by the United

States Bankruptcy Court for the Eastern District of Virginia (the "Court") in the above-captioned

cases on October 28, 2010) and the Attorneys Generals[1] of Alabama, Alaska, Arizona, Arkansas,

California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii,

Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts,

Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New

Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon,

Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont,

Virginia, Washington, West Virginia, Wisconsin, and Wyoming (the "Attorneys General", and

together with the Trustee, the "Parties"). Capitalized terms used but not defined herein shall have

the meanings ascribed to them in the Plan.

---

[1] The term "Attorneys General" shall be used to designate not only the signatory Attorneys General of the states but also the authorized representative within any jurisdiction signatory hereto that specifies an office other than that of the Attorney General to enter into agreements concerning matters relating to consumer protection.

**WHEREAS**:

1. Pursuant to the Plan, the Trustee is charged, among other things, with liquidating and collecting the Other Assets of the Estates. The Other Assets, as reflected on the Debtors' books and records, include accounts receivable from former customers of the Debtors related to alleged late fees and other alleged charges (collectively, the "Customer Accounts").

2. The Trustee, in the course of implementing the Plan, engaged Credit Control Services, Inc., ("CCS"), a Delaware corporation with headquarters located in Newton, Massachusetts, to handle the collection of the Customer Accounts.

3. CCS contracted with National Credit Solutions, LLC ("NCS") of Oklahoma City, Oklahoma to collect some of the Customer Accounts.

4. The Customer Accounts that the Trust referred for collection to CCS involve residents of all 50 states and the District of Columbia, and total approximately 3.3 million accounts with an aggregate of more than $244,000,000.00 in face amount.

5. The Attorneys General have raised a number of objections and concerns about the collection activities of CCS and/or NCS involving the Customer Accounts, and have also expressed concerns as to certain other issues related to the Customer Accounts. These objections and concerns include, but are not necessarily limited to:

      a. Alleged lack of notice to consumers of the amounts allegedly owed;

      b. Negative credit reporting regarding amounts allegedly owed;

      c. Demands for collection fees in addition to the principal amounts allegedly owed by former customers of the Debtors;

      d. Principal amounts which the Attorneys General assert to constitute "double charges" whereby a consumer is held responsible for both late fees and

product charges[2] for items purportedly rented;

e.   Issues relating to the validity and/or enforceability of some or all of the Customer Accounts alleged to be due and owing, including, for example, issues relating to waiver, estoppel, and alleged lack of supporting documentation or other evidence to substantiate the alleged debts;

f.   Consumer complaints directly challenging underlying amounts alleged to be due and owing; and

g.   Issues relating to the collection tactics used by CCS and/or NCS with respect to their efforts to collect the Customer Accounts.

6.   The Trustee contends that all actions taken by the Trust to date in connection with efforts to collect the Customer Accounts have been appropriate, and consistent with the Plan, the Debtors' customer agreements and applicable law.

7.   NCS has advised the Trust that: (i) it furnished negative credit reporting information regarding the Customer Accounts to TransUnion and Experian but not to any other credit reporting agencies; (ii) by no later than January 29, 2011, NCS had requested that TransUnion and Experian reverse any negative credit reporting previously initiated by NCS with respect to any of the Customer Accounts, and (iii) NCS has already furnished to TransUnion and Experian all necessary information regarding the Customer Accounts to enable TransUnion and Experian to reverse all such negative credit reports.

8.   NCS has also advised the Trust that, to the extent any collection fees were paid by customers as part of NCS's efforts to collect the Customer Accounts, the full amounts of such collection fees were paid to and retained by NCS, and no portion of such collection fees were paid

---

[2] A "Product Charge" is defined as a charge imposed by Hollywood Video or Movie Gallery for the value or cost of a rental item.

to or retained by the Trust.

9.      The Trustee, with the approval and consent of the Trust's Oversight Committee,
wishes to resolve the objections and concerns raised by the Attorneys General, in order that the
Trust may proceed with efforts to collect valid Customer Accounts in a commercially reasonable
and lawful manner. Subject only to the Court's approval of this Stipulation and Agreed Order, the
Attorneys General have agreed that the Trustee may pursue the continued collection of valid
Customer Accounts on the terms set forth below.

### NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED:

A.      **Rescission of All Previously Submitted Credit Reports**. The Trustee
agrees to take such further steps, if any, as may be reasonably necessary and within the Trustee's
power to assure that all negative credit reports submitted to any credit agency or bureau relating to
the Customer Accounts are rescinded.

B.      **No Future Credit Reporting and Future Collection Practices**. The
Trustee agrees that no further reports will be submitted by the Trust, or by any collection agency or
other agent acting on behalf of the Trust, to any credit reporting agency or bureau relating to the
Customer Accounts at any time. The Trustee further agrees to take such steps as are reasonably
necessary with CCS, NCS, and/or any other third party collection firm retained by the Trust to
collect the Customer Accounts to assure that this provision is effectively implemented and adhered
to. The Trustee shall also take all reasonably necessary actions to assure that any agent acting to
pursue collection of any of the Customer Accounts expressly agrees that it shall comply with the
provisions of the Fair Debt Collection Practices Act, applicable state laws, and with the venue
provisions of 28 U.S.C. 1409(b) for any related litigation. Any collection agency utilized by the
Trust to collect Customer Accounts shall also expressly agree that its employees and/or agents will

not state, suggest, imply or otherwise represent to any customer that their failure or refusal to pay

the Customer Account could result in adverse credit reporting by the Trust or by the collection

agency.

        C.    **No Future Collection of Fees or Interest**. The Trustee agrees that, in

connection with any further efforts to collect the Customer Accounts, there shall be no collection

fees or interest charges imposed on or added to the principal amounts owed by consumers on any

of the Customer Accounts. The Trustee further agrees to take such steps as are reasonably

necessary with CCS, NCS and/or any other third party collection firm retained by the Trust to

collect the Customer Accounts to assure that this provision is effectively implemented and adhered

to.

        D.    **Collection Fees Paid Prior to the Effective Date of this Stipulation.** The

Trustee agrees to reasonably assist the Attorneys General in any effort to recover any collection

fees that were improperly recovered by CCS or NCS prior to the effective date of this Stipulation,

provided however, that such assistance shall not require the Trustee or the Trust to commence,

prosecute or pursue any judicial or administrative action or similar proceeding. Reasonable

assistance shall include, but not be limited to, obtaining information requested by the Attorneys

General from Hollywood Video and Movie Gallery that relates to the Customer Accounts, or

obtaining other information within the possession, custody or control of the Trustee which the

Attorneys General deem reasonably necessary to pursue NCS or CCS with regard to their

collection activities concerning the Customer Accounts

        E.    **Disputed Late Fees or Product Charges**. With respect to any individual

consumer who has complained or does complain to the offices or agencies of any state, the Better

Business Bureau, the Trustee or the Trustee's agents, specifically contending that no late fees or

Product Charges were due, and so long as such complaint has first been provided to the Trustee, the Trust agrees that it will undertake no further collection efforts with respect to that Customer Account without first completing a review of the Debtor's business records and concluding, based on such investigation, that there is a reasonable basis to conclude that such late fees and/or Product Charges are in fact due and owing in accordance with the contractual terms applicable to the customer. Upon the request of the Attorney General or other appropriate office or agency with jurisdiction over any such customer's complaint, the Trust will share the results of its aforementioned investigation with such office or agency, subject to such confidentiality restrictions as may be required by law, prior to authorizing CCS, NCS and/or any other third party collection firm retained by the Trust to resume collecting the Customer Account.

F.      **No Recovery of Both Late Fee and Product Charges**. The Trustee agrees that for those Customer Accounts which include both a late fee and a Product Charge (for the same item), collection will be pursued only for the lesser of the two charges for any given rental item.

G.      **No Recovery of Stand-Alone Product Charges.** The Trustee agrees not to pursue the collection of any Product Charges related to a specific transaction if the Product Charge is the only fee reflected on the Customer Account for that transaction.

H.      **In the Event of the Sale of Customer Accounts.** To the extent that the Trustee transfers title to and ownership of any Customer Account to any third party, it agrees to do so pursuant to the following limitations:

> i.      Any such proposed sale or transfer shall include, as an attachment to the contract, a copy of this Stipulation and a term within the contract stating that the purchaser agrees that it is subject to the terms of this Stipulation as if it were the Trustee, including, but not limited to, any limitations regarding the use of third-party collection agencies and refraining from referring any Customer Account to any credit reporting agency or credit bureau.

    ii.  In addition to any notice or procedures required by the Court, the Trustee agrees to provide written notice to the Attorneys General of such pending sale at least 30 days prior to the completion of such sale. The notice should include:

      a.  the name and business contact information of the company to whom the debt is to be sold;

      b.  the contact information for the person with whom the sale is being negotiated; and

      c.  a copy of the proposed sale contract containing all terms of the agreement.

  I.  In consideration of the Trustee's agreement to, and subject to the Trustee's ongoing compliance with, the provisions of this Stipulation, the Attorneys General agree (i) not to interpose any generalized objections to the validity or legitimacy of the Customer Accounts, (ii) to take no actions to prevent, interfere with or delay the Trustee's collection of the Customer Accounts provided that such collection efforts are consistent with applicable state and federal law and with the terms set forth herein (subject to the rights of the Attorneys General to act on behalf of individual customer complaints as expressly provided for in the following sentence), and (iii) to assert no claims, actions or damages, and to seek no relief, whether legal or equitable, against the Trustees, the Trust, the beneficiaries of the Trust, the affiliates of any of the foregoing (which, for the avoidance of doubt, shall not include either CCS or NCS) or any of their respective professionals arising from the objections and concerns stated in above paragraph 5 of this Stipulation. Notwithstanding the foregoing, or any of the language included in Paragraph E, the Attorneys General reserve the right to take any and all appropriate actions reasonably necessary to assist any individual resident of their respective states in efforts to resolve concerns or disputes regarding a particular Customer Account, and the Trustee reserves all claims, rights and defenses of the Trust and of the Debtors with respect to any such Customer Account.

  J.  In consideration of the Attorneys' General agreement to the provisions of

this Stipulation, the Trustee, acting for and on behalf of the Trust and its beneficiaries, their agents, assigns, affiliates, successors and respective professionals, agrees to assert no claims, actions or damages, and to seek no relief, whether legal or equitable, against any of the Attorneys General for acts related to or arising out of the Attorneys' General investigation and/or the resolution of that investigation of the objections and concerns stated in above paragraph 5 of this Stipulation.

K.     The Court shall retain exclusive jurisdiction over any disputes or claims arising from or related in any way to the Stipulation. Any motion or application brought before the Court to resolve a dispute arising from or related to this Stipulation and Agreed Order shall be brought on proper notice upon the undersigned parties in accordance with the relevant Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia. Notwithstanding the foregoing, this Stipulation shall not vest jurisdiction in the Court over claims by a private party or public official, based on state or federal law, against any third party collection firm that is involved in attempting to collect the Customer Accounts.

L.     Nothing in this Stipulation shall be construed to create, waive, or limit any right of action by any of the Parties against any third party collection agency. This Stipulation does not constitute a release or waiver of claims against any third party, including but not limited to CCS and/or NCS.

M.     Nothing in this Stipulation shall be construed to create, waive, or limit any private right of action or any other action by any party other than the Attorneys General.

N.     The Trustee's agreement to comply with the provisions of this Stipulation shall be limited to Customer Accounts of customers resident within the jurisdictions of the respective Attorneys General, and the Trustee's pursuit of the collection of Customer Accounts of

customers resident outside of the jurisdictions of the respective Attorneys General shall be unaffected by this Stipulation.

O.   Nothing in this Stipulation shall be construed as relieving the Trustee of the obligation to comply with all state and federal laws, regulations or rules, nor shall any of the provisions of this Stipulation be deemed to be permission to engage in any acts or practices prohibited by such law, regulation, or rule.

P.   Once approved by the Court, this Stipulation shall be binding on and inure to the benefit of the Parties hereto and their respective successors and assigns.

Q.   The Parties' resolution, as set forth in this Stipulation, is acknowledged to be consensual.

R.   The undersigned Parties hereby represent and warrant that: (i) they have full authority to execute this Stipulation and Agreed Order; (ii) they have full knowledge of, and have consented to, this Stipulation and Agreed Order; and (iii) they are fully authorized to bind themselves to all of the terms and conditions of this Stipulation and Agreed Order.

S.   Each Party shall bear its own attorneys' fees and costs in connection with the matters resolved hereby.

T.   This Stipulation shall not be modified, altered, amended or vacated without the written agreement of the Parties.

U.   Beginning on the effective date of this Stipulation and Agreed Order, information regarding consumer complaints submitted to the Attorneys General and that relate to or arise out of the objections and concerns stated in above paragraph 5 of this Stipulation, including without reservation acts undertaken by any successor to the Trustee or unnamed collection agents, will be directed to the following designee at the addresses provided:

Hollywood Video/Movie Gallery Customer Service
c/o Mr. Ryan Storfa
7405 Southwest Tech Center Drive, Suite 130
Tigard, Oregon 97223
Email: customerrequests@hlyw.com

     V.    This Stipulation and Agreed Order may be signed in counterparts, and when

taken together, shall constitute a single document.

     W.    This Stipulation and Agreed Order shall be effective immediately

upon its entry by the Court, and no stay shall apply.

**STATE OF ALABAMA**
Luther Strange, Attorney General

By:  /s/ Noel S. Barnes
    Noel S. Barnes (BAR155)
    Assistant Attorney General
    State of Alabama
    Office of the Attorney General
    501 Washington Avenue
    Post Office Box 300152
    Montgomery, Alabama 36130
    Telephone: (334) 353-9196
Email: nbarnes@ago.state.al.us

**STATE OF ALASKA**
John J. Burns, Attorney General

By: /s/ Davyn D. Williams
    Davyn D. Williams
    Alaska Bar No. 0711093
    Assistant Attorney General
    Alaska Office of the Attorney General
    1031 W. 4th Ave., Suite 200
    Anchorage, AK 99501
    Telephone: (907) 269-5200
    Email: Davyn.williams@alaska.gov
**STATE OF ARIZONA**
Thomas C. Horne, Attorney General

By:  /s/ Rebecca C. Salisbury
    Rebecca C. Salisbury
    Assistant Attorney General

Office of the Arizona Attorney General
1275 W. Washington Street
Phoenix, Arizona 85007
Telephone: (602) 542-7757
Email: Rebecca.Salisbury@azag.gov

**STATE OF ARKANSAS**
Dustin McDaniel, Attorney General

By:  /s/ Sarah R. Tracker
    Sarah R. Tacker,
    Arkansas Bar No. 2002189
    Senior Assistant Attorney General
    Office of the Arkansas Attorney General
    323 Center Street, Suite 500
    Little Rock, AR 72201
    Telephone: (501) 682-1321
    Email: sarah.tacker@arkansasag.gov
**STATE OF CALIFORNIA**
Kamala D. Harris, Attorney General

By:  /s/ Kamala D. Harris
    Kamala D. Harris
    California Bar No. 146672
    Attorney General
    Office of the California Attorney
    General
    1300 I Street, Sacramento, CA 95814
    Telephone: (916) 324-5437
    Email: attorneygeneral@doj.ca.gov

**STATE OF COLORADO**

John Suthers, Attorney General

By:  /s/ Jay B. Simonson
Jay B. Simonson
Colorado Bar No. 24077
First Assistant Attorney General
Office of the Colorado Attorney
General
1525 Sherman St., Denver CO 80203
Telephone: (303) 866-5162
Email: jay.simonson@state.co.us

**STATE OF CONNECTICUT**

George Jepsen, Attorney General

By:  /s/ Brendan T. Flynn
Brendan T. Flynn (ct04545)
Assistant Attorney General
Office of the Attorney General
110 Sherman Street
Hartford, Connecticut 06105
Phone: 860-808-5400
Email: Brendan.Flynn@ct.gov

**STATE OF DELAWARE**

Joseph R. Biden, III, Attorney General

By:   /s/ Jeremy D. Eicher
Jeremy D. Eicher
Delaware Bar No. 5093
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, Delaware 19801

**DISTRICT OF COLUMBIA**

Irvin B. Nathan, Acting Attorney General

By:  /s/ Bennett Rushkoff
Bennett Rushkoff
Chief, Public Advocacy Section

By:  /s/ Grant G. Moy, Jr.
Grant G. Moy, Jr.
Assistant Attorney General
441 4th Street, NW, Suite 650N
Washington, DC 20001
Telephone: (202) 727-6337
Email: grant.moy@dc.gov

Attorneys for the District of Columbia

**STATE OF FLORIDA**

Pamela Jo Bondi, Attorney General

By:   /s/ Andrew Bennett Spark
Andrew Bennett Spark
Florida Bar No. 0899811
Assistant Attorney General
Florida Attorney General's Office
3507 E. Frontage Rd., Ste. 325
Tampa, FL 33607
Telephone: (813) 287-7950
Email:Andrew.Spark@myfloridalegal.com

**STATE OF GEORGIA**

John D. Sours, Administrator,
Fair Business Practices Act

By:   /s/ John D. Sours
John D. Sours
Administrator, Governor's Office
of Consumer Protection
Georgia Bar No. 667350.
2 Martin Luther King, Jr. Drive
East Tower, Suite 356

Atlanta, Georgia 30334
Telephone: (404) 656-3790

**STATE OF HAWAII**

Stephen H. Levins, Executive
Director of the Office of Consumer
Protection

By: _/s/ Jeffrey E. Brunton_
Jeffrey E. Brunton, Staff Attorney
Department of Commerce and
Community Affairs
Office of Consumer Protection
235 South Beretania Street, Suite 801
Honolulu, Hawaii 96813
Telephone: (808) 536-2636
Email: ocp@dcca.hawaii.gov

**STATE OF IDAHO**

Lawrence Wasden, Attorney General

By: _/s/ Stephanie Guyon_
Stephanie Guyon
Deputy Attorney General
Consumer Protection Division
Office of the Idaho Attorney General
954 W. Jefferson St., 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 334-4135
Email: stephanie.guyon@ag.idaho.gov

**STATE OF ILLINOIS**

Lisa Madigan, Attorney General

By: _/s/ Jeffrey M. Feltman_
Jeffrey M. Feltman
Illinois Bar No. 106237048
Assistant Attorney General
Office of the Illinois Attorney General
1001 E. Main St.
Carbondale, IL 62975
Telephone: (618) 529-6418

Email: jfeltman@atg.state.il.us

**STATE OF INDIANA**

Gregory F. Zoeller, Attorney General

By: _/s/ Mark M. Snodgrass_
Mark M. Snodgrass
Deputy Attorney General
Atty. No. 29495-49
Office of Attorney General
302 W. Washington Street, 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-6784
Email: Mark.Snodgrass@atg.in.gov

**STATE OF IOWA**

Thomas J. Miller, Attorney General

By: _/s/ Jessica J. Whitney_
Jessica J. Whitney
Assistant Attorney General
Hoover Building, 2nd Floor
1305 East Walnut
Des Moines, IA 50319
Telephone: (515) 281-6386
Email: Jessica.Whitney@iowa.gov

**STATE OF KANSAS**

Derek Schmidt, Attorney General

By: _/s/ Derek Schmidt_
Derek Schmidt
Kansas Bar No. 17781
Office of Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Telephone: (785) 296-2215
Email: Derek.Schmidt@ksag.org

Email: Linda.conti@maine.gov

**COMMONWEALTH OF KENTUCKY**
Jack Conway, Attorney General

By:  /s/ Kevin R. Winstead
Kevin R. Winstead
Kentucky Bar No. 82250
Assistant Attorney General
Kentucky Attorney General's Office
of Consumer Protection
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601-8204
Telephone: (502) 696-5389
Email: kevin.winstead@ag.ky.gov

**STATE OF LOUISIANA**
James D. "Buddy" Caldwell, Attorney
General

By:  /s/ James D. "Buddy" Caldwell
James D. "Buddy" Caldwell
Post Office Box 94005
Baton Rouge, LA 70804

**STATE OF MARYLAND**
Douglas F. Gansler, Attorney General

By:  /s/ Catherine Dowling
Catherine Dowling
Assistant Attorney General
Office of the Attorney General
Consumer Protection Division
200 Saint Paul Place
Baltimore, Maryland 21202
Telephone: (410) 576-6577

**STATE OF MASSACHUSETTS**
Martha Coakley, Attorney General

By:  /s/ David W. Monahan
David W. Monahan
BBO # 551768
Deputy Chief
Consumer Protection Division
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
Telephone (617) 727-2200, x. 2954
Email: David.Monahan@state.ma.us

**STATE OF MAINE**
William J. Schneider, Attorney General

By:  /s/ Linda Conti
Linda Conti
Assistant Attorney General
ME Bar. No. 3638
Office of the Attorney General
State House Station 6
Augusta, ME 04333
Telephone: (207) 626-8591

**STATE OF MICHIGAN**
Bill Schuette, Attorney General

By:  /s/ Kathy Fitzgerald
Kathy Fitzgerald (P31454)
Assistant Attorney General
Consumer Protection Division
P.O. Box 30213
Lansing, MI 48909

**STATE OF MINNESOTA**
Lori Swanson, Attorney General

By: ___/s/ David Cullen_____
    David Cullen
    Assistant Attorney General
    Minnesota Atty. Reg. No. 0338898
    445 Minnesota St., #1200
    St. Paul, MN 55101-2130
    Telephone: (651) 757-1221
    Email: david.cullen@state.mn.us

**STATE OF MISSISSIPPI**
Jim Hood, Attorney General

By: ___/s/ Meredith M. Aldridge_____
    Meredith M. Aldridge
    Mississippi Bar No. 100696
    Special Assistant Attorney General
    Office of the Mississippi Attorney
    General
    550 High Street, Suite 1200
    Jackson, MS 39201
    Telephone: (601) 359-4204
    Email: maldr@ago.state.ms.us

**STATE OF MONTANA**
Steve Bullock, Attorney General

By: ___/s/ Jim Molloy_____
    Jim Molloy
    Chief of Consumer Protection
    Chuck Munson
    Assistant Attorney General
    Office of Consumer Protection
    215 N. Sanders
    Helena, MT 59601
    Telephone: (406) 444-2026
    Email: jmolloy@mt.gov

**STATE OF NEBRASKA**
Jon Bruning, Attorney General

By: ___/s/ Leslie C. Levy_____
    Leslie C. Levy
    Nebraska Bar No. 20673
    Assistant Attorney General
    Office of the Nebraska Attorney
    General
    2115 State Capitol Building
    Lincoln NE 68509
    Telephone: (402) 471-2811
    Email: leslie.levy@nebraska.gov

**STATE OF MISSOURI**
Chris Koster, Attorney General

By: ___/s/ Douglas M. Ommen_____
    Douglas M. Ommen
    Chief Counsel
    Consumer Protection Division
    PO Box 899
    Jefferson City, MO 65102
    Telephon: (573) 751-7007
    Email: Doug.Ommen@ago.mo.gov

**STATE OF NEVADA**
Catherine Cortez Masto, Attorney General

By: ___/s/ Jo Ann Gibbs_____
    Jo Ann Gibbs
    Senior Deputy Attorney General
    Nevada Bar No. 005324
    555 E. Washington Avenue, #3900
    Las Vegas, Nevada 89101
    Telephone: 702-486-3789
    Email: jgibbs@ag.nv.gov

Email: lotero@nmag.gov

**STATE OF NEW HAMPSHIRE**

Michael A. Delaney, Attorney General

By: /s/ Constance N. Stratton

Constance N. Stratton
New Hampshire Bar No. 7939
Senior Assistant Attorney General
Office of the New Hampshire
Attorney General
33 Capitol St.
Concord, NH 03301
Telephone: (603) 271-3643
Email: connie.stratton@doj.nh.gov

**STATE OF NEW JERSEY**

Paula T. Dow, Attorney General

By: /s/ Patricia Schiripo

Patricia Schiripo
Deputy Attorney General
Assistant Section Chief
Consumer Fraud Prosecution, PS 8312
PS 8312, Division of Law
124 Halsey Street 5th Floor
Newark, New Jersey 07101
Email:
patricia.schiripo@dol.lps.state.nj.us

**STATE OF NEW YORK**

Eric T. Schneiderman, Attorney General

By: /s/ Amy Schallop

Amy Schallop
Assistant Attorney General
The Capitol
Albany, New York 12224-0341
Telephone: (518) 486-4555

**STATE OF NORTH CAROLINA**

Roy Cooper, Attorney General

By: /s/ M. Lynne Weaver

M. Lynne Weaver
Assistant Attorney General
N.C. Bar No. 19397
P.O. Box 629
114 W. Edenton St.
Raleigh, NC 27602
Telephone: 919.716.6000
Email: lweaver@ncdoj.gov

**STATE OF NEW MEXICO**

Gary K. King, Attorney Generl

By: /s/ Lawrence Otero

Lawrence Otero
Assistant Attorney General
Office of the Attorney General
Consumer Protection Division
P.O. Drawer 1508
Santa Fe, NM 87501
Telephone: 505-827-6704

**STATE OF NORTH DAKOTA**
Wayne Stenehjem, Attorney General

By:   /s/ Parrell Grossman
        Parrell Grossman, I.D. Number 04684
        Assistant Attorney General, Director
        Consumer Protection
        and Antitrust Division
        Office of Attorney General
        Gateway Professional Center
        1050 E. Interstate Ave. Ste 200
        Bismarck, ND 58503-5574
        Telephone: (701) 328-5570

**STATE OF OHIO**
Michael Dewine, Attorney General

By:   /s/ Melissa G. Wright
        Melissa G. Wright (Ohio Bar No.
        0077843)
        Assistant Attorney General Consumer
        Protection
        Section 30
        East Broad Street, 14th Floor
        Columbus, Ohio 43215-3428
        Telephone: (614) 466-8169
        Email:
melissa.wright@ohioattorneygeneral.gov

**STATE OF OKLAHOMA**
E. Scott Pruitt, Attorney General

By:   /s/ Julie A. Bays
        Julie A. Bays
        Assistant Attorney General
        Consumer Protection Unit
        313 N.E. 21st Street
        Oklahoma City, Oklahoma 73105
        Telephone: (405) 522-3082
        Email: Julie.Bays@oag.ok.gov

**STATE OF OREGON**
John R. Kroger, Attorney General

By:   /s/ Andrew U. Shull
        Andrew U. Shull OR Bar# 024541
        Assistant Attorney General
        Civil Enforcement Division
        Oregon Department of Justice
        1162 Court Street, NE
        Salem, OR 97301-4096
        Telephone: (503) 934-4400
        Email: andrew.shull@doj.state.or.us

**STATE OF PENNSYLVANIA**
William H. Ryan, Jr., Attorney General

By:   /s/ John M. Abel
        John M. Abel
        Senior Deputy Attorney General
        Pennsylvania Office of Attorney
        General
        Bureau of Consumer Protection
        PA Attorney I.D. No. 47313
        Office of Attorney General
        15th Floor, Strawberry Square
        Harrisburg, Pennsylvania 17120
        Telephone: (717) 787-9707
        Email: jabel@attorneygeneral.gov

**STATE OF RHODE ISLAND**
Peter F. Kilmartin, Attorney General

By:   /s/ Edmund F. Murray, Jr.
        Edmund F. Murray, Jr. Esq. (#3096)
        Special Assistant Attorney General
        Rhode Island Department
        of Attorney General
        150 South Main Street
        Providence, RI 02903-2907
        Telephone (401) 274-4400 x 2401
        Email: emurray@riag.state.ri.us

**STATE OF SOUTH CAROLINA**
Alan Wilson, Attorney General

By: ___/s/ C. Havird Jones, Jr._____
    C. Havird Jones, Jr.
    South Carolina Bar No. 3178
    Assistant Deputy Attorney General
    Office of the South Carolina
    Attorney General
    Rembert Dennis Building
    1000 Assembly Street, Room 519
    Columbia, SC 29201
    Email: agsjones@scag.gov

**STATE OF SOUTH DAKOTA**
Marty J. Jackley, Attorney General

By: ___/s/ Jeffery J. Tronvold_____
    Jeffery J. Tronvold
    Assistant Attorney General
    1302 East Highway 14, Suite 1
    Pierre, South Dakota 57501-8501
    Telephone: (605) 773-3215
    Email: Jeffery.tronvold@state.sd.us

**STATE OF TENNESSEE**
Robert E. Cooper, Jr., Attorney General

By: ___/s/ Gina Baker Hantel_____
    Gina Baker Hantel, Senior Counsel
    Tennessee Bar No. 018019
    Office of the Tennessee Attorney
    General
    Bankruptcy Division
    Post Office Box 20207
    Nashville, Tennessee 37202-0207
    Telephone: (615) 532-8928
    Email: Gina.Hantel@ag.tn.gov

**STATE OF TEXAS**
Greg Abbott, Attorney General

By: ___/s/ Bruce V. Griffiths_____
    Bruce V. Griffiths
    Texas State Bar No. 08486500
    1Assistant Attorney General

    Consumer Protection &
    Public Health Division
    P.O. Box 12548
    Austin, Texas 78711-2548
    Telephone (512) 475-4184
    Email: Bruce.Griffiths@oag.state.tx.us

**STATE OF UTAH**
Mark L. Shurtleff, Attorney General

By: ___/s/ Annina M. Mitchell_____
    Annina M. Mitchell
    Utah Bar No. 2274
    Utah Solicitor General
    Office of the Utah Attorney General
    160 East 300 South
    PO Box 140848
    Salt Lake City, UT 84114-0858
    Telephone: (808) 366-0533

**STATE OF VERMONT**
William H. Sorrell, Attorney General

By: ___/s/ Elliot Burg_____
    Elliot Burg
    Assistant Attorney General
    Office of the Vermont Attorney
    General
    109 State Street
    Montpelier, VT 05609
    Telephone (802) 828-2153
    Email: eburg@atg.state.vt.us

**COMMONWEALTH OF VIRGINIA**
Kenneth T. Cuccinelli, II, Attorney General

By: ___/s/ Mark M. Kubiak_____
    Mark S. Kubiak, VSB # 73119
    Assistant Attorney General
    Office of the Attorney General
    900 East Main Street
    Richmond, Virginia 23219
    Telephone: (804) 786-7364
    Email: mkubiak@oag.state.va.us


**STATE OF WASHINGTON**
Robert M. McKenna, Attorney General

By: _/s/ Mary C. Lobdell_____
    MARY C. LOBDELL
    Assistant Attorney General
    Office of the Washington
    Attorney General
    Consumer Protection Division
    P.O. Box 2317
    Tacoma, WA 98401-2317


**STATE OF WEST VIRGINIA**
1Darrell McGraw, Jr., Attorney General

By: ___/s/ Matthew Stonestreet_____
    1Matthew Stonestreet
    (WV State Bar #11398)
    Assistant Attorney General
    Office of the West Virginia Attorney
General
    812 Quarrier St.
    Charleston, WV 25301
    Telephone: (304) 558-8986
    Emil: matthew.stonestreet@wvago.gov


**STATE OF WISCONSIN**
J.B. Van Hollen, Attorney General

By: _/s/ Lara Sutherlin_____
    Lara Sutherlin
    Assistant Attorney General
    State Bar #1057096
    Wisconsin Department of Justice
    Post Office Box 7857
    Madison, Wisconsin 53707-7857
    Telephone: (608) 267-7163
    Email: sutherlinla@doj.state.wi.us


**STATE OF WYOMING**
Gregory A. Phillips, Attorney General

By: _/s/ Gregory A. Phillips_____
    Gregory A. Phillips
    Wyoming Bar No. 5-2516
    Office of the Wyoming Attorney
    General
    123 Capitol Building
    Cheyenne, WY 82002
    Telephone: (307) 777- 7841
    Email: gphill@state.wy.us


**CORLISS MOORE & ASSOCIATES,
LLC,** solely in its capacity as Liquidating
Trustee for the First Lien Term Lenders
Liquidating Trust

By: _/s/ Steve Moore_____
    Steve Moore, Trustee


**LOCAL RULE 9022-1(C)(1) CERTIFICATION**

Pursuant to the Local Rules, I certify under penalty of perjury that all necessary parties have endorsed this Stipulation and Agreed Order.

By: /s/ Michael A. Condyles

**THIS STIPULATION IS SO ORDERED**

Dated: _____      _____

    Richmond, Virginia          Chief Judge Douglas O. Tice, Jr.
                                 United States Bankruptcy Judge